Jones, J.
Where the insured’s automobile struck one oncoming vehicle, ricocheted off and struck a second more than 100 feet away, was there more than one “ occurrence ” within the meaning of the provision fixing limits of liability in an automobile insurance policy?
Appellant moved for summary judgment in an action by it for a declaration that the claims filed by respondents against its insured, Gerald Koningisor, all arose out of a single ‘ ‘ occurrence ” under the terms of the applicable automobile insurance policy. Supreme Court, Brie County, denied the motion on the *171 ground that it was a question of fact for the jury whether there was more than a single occurrence. On appeal the Appellate Division, Fourth Department, affirmed. Pursuant to leave granted by the Appellate Division, the case is now before our court on the certified question: “ Was the order of this Court [Appellate Division] entered May 25,1972 properly made? ”
The certified question should be answered in the negative, the order of the Appellate Division reversed, and appellant’s motion for summary judgment granted.
Gerald Koningisor, insured by appellant, was the owner and operator of a motor vehicle which collided with two cars while traveling southbound on Route 240 in Erie County. Koningisor first sideswiped one northbound vehicle (respondent Barreca) and then continued on to a head-on collision with a second northbound vehicle (respondent Ras). On examinations before trial there was testimony that the Koningisor vehicle was traveling 50 to 60 miles per hour and that before the collisions the northbound vehicles were proceeding 400 to 500 feet apart. The Appellate Division also found that the Koningisor vehicle had traveled at least 130 feet between the first and the second collisions.
Actions were brought to recover for personal injuries and wrongful death against Koningisor and his insurance company. The latter then tendered $20,000 to settle all of the actions, asserting that Koningisor’s automobile liability insurance policy limited coverage to $20,000 for each “ occurrence ” and that there had been only one “ occurrence ” here. Respondents rejected the $20,000 settlement,, asserting that no such limit existed because each of the two collisions was a separate “ occurrence ” and that the actual damages involved were far in excess of $20,000.
We confront two questions on this appeal, one procedural, the other substantive. First, is the construction of the insurance policy to be left to a jury, as both courts below have held, or is it for the court to determine? Second, if the court is to construe the provisions of the insurance policy, how shall we then interpret the word “ occurrence ” in this case?
The objective in any question of the interpretation of a written contract, of course, is to determine “ what is the intention of the parties as derived from the language employed ” (4 Willis- *172 ton, Contracts [3d ed.], § 600, p. 280). At the same time the test on a motion for summary judgment is whether there are issues of fact properly to be resolved by a jury (CPLR 3212, subd. [b]). In general the courts have declared on countless occasions that it is the repsonsibility of the court to interpret written instruments (Williston, op. cit., § 601, p. 303). This is obviously so where there is no ambiguity. (Bethlehem Steel Co. v. Turner Constr. Co., 2 N Y 2d 456.)
If there is ambiguity in the terminology used, however, and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury (Restatement, 2d, Contracts, T. D. No. 5, § 238). On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence, the issue is to be determined as a question of law for the court. (Cf. Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn., 32 N Y 2d 285, 291.)
We hold that the interpretation of the provisions of the insurance policy in the circumstances of this case is an issue to be decided by our court on appellate review.
As the parties agree, there is no relevant evidence extrinsic to the insurance policy bearing on the intention of the parties at the time of its execution. Thus, there is no question of credibility and there are no inferences to be drawn from extrinsic evidence. As to the accident, the controlling facts are adequately before us. There is no controversy as to what happened when the cars collided, and there is no offer of further proof.
Additionally both appellant and respondent agree that this case presents no dispute of fact for a jury and urge us to decide the issue. To that extent they may be said to waive any submission of the issue to a jury.
We turn, then, to the substantive question of how the word “ occurrence ” shall be construed in this insurance policy on these facts.
Initially we observe that most of the reported cases involving similar questions of interpretation revolve around the number of “ accidents ” rather than the number of “ occurrences ”. Both parties urge, however, that the words “ accident ” and “ occurrence ” are synonymous. Past cases have used the *173 words interchangeably and we agree that no distinction should be drawn on this basis in the present case.*
Our court had occasion in Johnson Corp. v. Indemnity Ins. Co. (7 N Y 2d 222) to consider the interpretation to be placed on the word “ accident ” as used in a policy insuring general construction contractors against contract liability. We see no rear son why we should now adopt a different standard or test merely because the question in the case before us arises under an automobile liability policy rather than a contractor’s public liability policy. On the contrary, the perspective and expectation of the ordinary purchaser of either type of insurance would be the same.
In Johnson our court recognized three classes of decisions; (1) that class in which it had been held that there was but a single accident “ 1 where * * * one negligent act or omission is the sole proximate cause ’ ” of all resultant damages; (2) that class in which it had been held that there is a separate accident with respect to each person who has suffered a loss (the so-called <£ English rule ”); and (3) that class in which it had been held that there is one accident if there has been but a single “ event of an unfortunate character that takes place without one’s foresight or expectation ”, a single ££ unexpected, unfortunate occurrence ”. (7NY 2d, at pp. 227-228.) • We conclude then, u [t]his approach of determining simply whether there was one unfortunate event or occurrence seems to us to be the most practical of the three methods of construction which have been advanced because it corresponds most with what the average person anticipates when he buys insurance and reads the ‘ accident ’ limitation in the policy.” (idem., p„ 229).
Applying the “ event ” test, then, to the facts before us on this appeal, we conclude that there was but a single occurrence. *174 Unlike Johnson in which there was a 50-minute elapsed interval between the collapse of the first and the second cellar walls, the two collisions here occurred but an instant apart. The continuum between the two impacts was unbroken, with no intervening agent or operative factor. We think in common understanding and parlance there was here but a single, inseparable “ three-car accident ”. For what significance it may have we note that the police at the time drew up but a single accident report.
Accordingly, the certified question must be answered in the negative, the order of the Appellate Division reversed, and appellant’s motion for summary judgment granted.
Chief Judge Fuld and Judges Burke and Jasen concur with Judge J ones ; Judges Bbeitel and Wachtler dissent and vote to affirm on the opinion at the Appellate Division; Judge Gabrielli taking no part.
Order reversed, without costs, and plaintiff’s motion for summary judgment granted. Question certified answered in the negative.

 To the extent that there is any distinction between the two words, “ occurrence ” would appear more closely to approximate “ event ”. It is defined as “1. An act or instance of occurring. 2. Something that takes place; an incident” (The American Heritage Dictionary of the English Language, 1969, p. 908). On the other hand, an “accident” is defined as “1. An unexpected and undesirable event; a mishap. 2. Anything that occurs unexpectedly or unintentionally ”, op. cit., p. 8. Thus, the latter definition suggests a connotation as to causation, while the former is more objectively descriptive of what occurred rather than being in any way related to how or why. We repeat, however, we see no occasion to find any difference between the two nouns for present purposes.